**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| JOSEPH I. BROWN, III, ) | |
| ) | No. 2:12-cv-01865-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CITY OF CHARLESTON and OFFICER ) | |
| SEAN ENGLES, ) | |
| ) | |
| Defendants. ) | |
| ) | |

In this case, plaintiff Joseph I. Brown, III seeks recovery for injuries suffered when a police SUV operated by Officer Sean Engles of the City of Charleston Police Department collided with Brown's bicycle. This matter comes before the court on cross motions for summary judgment. Plaintiff moves for summary judgment on his claim of negligence against Officer Engles and the City of Charleston. Officer Engles moves for summary judgment on plaintiff's claim of excessive force under 42 U.S.C. 1983. For the reasons set forth below, the court grants in part and denies in part plaintiff's motion and grants in part and denies in part defendants' motion.

## I. BACKGROUND

On March 6, 2012, plaintiff filed a complaint against the City of Charleston (the City) in state court, bringing a state law claim for battery. On June 20, 2012, plaintiff filed an amended complaint, adding Officer Engles of the Charleston Police Department (CPD) as a defendant and bringing four claims: (1) battery against Officer Engles and the City; (2) negligence against Officer Engles and the City; (3) a § 1983 claim against Officer Engles for use of excessive force; and (4) a § 1983 claim against the City for

1

failure to train and supervise. On July 5, 2012, defendants removed the case to federal court. On June 13, 2013, the parties filed motions for summary judgment.

On June 2, 2011 at approximately 10:55 p.m., Officer Engles and two other officers were on patrol in the Gadsden Green housing complex in Charleston. Officer Engles was operating a police SUV accompanied by the other officers. Am. Compl. ¶ 3. They noticed plaintiff, who was riding his bicycle and had stopped to chat with another person. Id. ¶ 4. The officers witnessed what they believed to be a hand-to-hand illegal drug transaction. Id. ¶ 5.

The officers pursued plaintiff, with Officer Engles remaining in the police SUV and the other two officers exiting the vehicle and following Brown on foot. In his recounting of the events, Brown claims that the SUV "comes behind me and trails me for a good while, and eventually, impacts me. I fly off the bike, and I land." Brown Dep. 29:1-3. Brown alleges Officer Engles had "decided to apprehend Plaintiff by driving his SUV into Plaintiff and his bicycle." Am. Compl. ¶ 6.

Brown claims the collision caused

> Plaintiff's bicycle to be knocked out of control and to be broken, to be wrenched and to be demolished, whereby the Plaintiff sustained serious damage to and loss of use of said bicycle; causing the Plaintiff to be thrown violently about and to sustain serious, severe, painful and permanent bodily injuries; to suffer and continue to suffer pain and agony, both physically and mentally; to be put to great expense, past, present and future for medical care; to become permanently disabled so that the Plaintiff has suffered a loss of income and standard of living in the past, present and future; and, to otherwise suffer both actual and punitive damages.

Id. ¶ 17. Plaintiff states that to this day, he walks with a limp and a cane. Pl.'s Mem. Supp. Am. Mot. Summ. J. 1. He incurred medical bills in the amount of $12,428.00 for

an emergency room visit, $2,426.00 for treatment by physicians, and $21,425.50 to date for follow-up treatment.

Defendants produced a police report summarizing the events that took place on June 2, 2011. The report states that Brown fled the scene after being ordered to stop by an officer who had exited the police SUV. The report further states that Officer Engles drove behind plaintiff and activated his blue lights, after which Brown suddenly slammed on the brakes of his bicycle. This caused the front bumper of the SUV to come into contact with Brown's rear bicycle tire. See Defs.' Mot. Summ. J. Ex. 1.

To support his claims, Brown relies on Officer Engles's deposition testimony regarding how closely he followed behind Brown in the police SUV:

> Q. Now, in this case you did not keep a safe distance behind him?
>
> A. I was too close to him, and he gave no indication that he was going to stop. There was no -- a bicycle doesn't have brake lights where I would see the warning. And given his continual flight, I was expecting him to run into the projects or take the bike into the projects or continue his flight. I was not expecting a dead stop.
>
> Q: But as you admitted, you did not keep a safe distance behind him?
>
> A: If I had been a little further behind him, then I would not have impacted him.

Engles Dep. 38:13-25.

> Q. And isn't the following vehicle supposed to maintain a far enough distance so that the following vehicle can, likewise, come to a safe stop without hitting the lead vehicle?
>
> A: Yes.
>
> Q: And in this case, you did not keep a distance behind Mr. Brown where you could bring your vehicle to stop without hitting him?
>
> A: Correct.

3

Id. at 39:19-40:2. Brown also relies on a report by Paramedic Case Spirk, who attended to Brown on the night in question. The report states that CPD officers told Spirk that they had "paced" plaintiff's bicycle "at less than 10 mph and struck the back wheel of the bike *in an attempt to stop the bike*." Pl.'s Am. Mot. Summ. J. Ex. 9 (emphasis added).

Defendants maintain that the collision was an accident, relying on Officer Engles's deposition testimony that he had no intention of stopping or restraining Brown with the police SUV:

> A: The impact itself was an accident.
>
> Q: Now, how was it an accident?
>
> A: Because it was not my intent to stop him using the vehicle.

Id. at 37:16-20.

## II.  STANDARDS

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Id. at 255.

Under Rule 56(c)(1)(B), a party asserting that a fact cannot be genuinely disputed must support the assertion by "showing that the materials cited do not establish the . . .

4

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." The moving party may also "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

### III. DISCUSSION

Plaintiff moves for summary judgment on his negligence claim. Officer Engles moves for summary judgment on plaintiff's § 1983 excessive force claim.[1] These motions are addressed in turn.

#### A.    Plaintiff's Motion for Summary Judgment

Brown seeks judgment as a matter of law that Officer Engles was negligent in causing plaintiff's injuries because he violated state statutes and police safety procedures prohibiting following too closely and using a vehicle to stop a fleeing pedestrian. Brown also argues this negligence is attributable to the City.

Brown has submitted evidence that tends to show Officer Engles was negligent in his operation of the police SUV. For example, Brown cites Officer Engles's testimony that he was following Brown's bicycle too closely and would not have collided with Brown had he been driving further behind Brown's bicycle. Engles Dep. 38:13-25. Brown argues this testimony demonstrates that Officer Engles breached the standard of

---

[1] The City has not moved for summary judgment on plaintiff's state law claims for battery and negligence or on plaintiff's § 1983 claim for failure to train and supervise. Officer Engles moves for summary judgment on the state law claims on the ground that these claims are brought under the South Carolina Tort Claims Act and he is not a proper party under the Act. See Defs.' Mem. Supp. Mot. Summ. J. 9-10. Because the Act provides that "only the agency or political subdivision for which the employee was acting" shall be named in a claim arising under the Act, the court dismisses Officer Engles from plaintiff's state law claims. S.C. Code Ann. § 15-78-70(c).

5

care established by S.C. Code Ann. § 56-5-3435, which prohibits a driver of a motor vehicle from failing to maintain a safe operating distance between the motor vehicle and a bicycle. In response, the City contends summary judgment on plaintiff's negligence claim would be inappropriate because there are genuine issues of material fact as to whether Officer Engles was following plaintiff in a reasonable and prudent manner under the circumstances. The City also asserts various affirmative defenses, such as that by allegedly causing the officers to chase him and then slamming on his brakes, Brown was comparatively negligent, Brown created a sudden emergency or unavoidable accident, Brown's actions constituted intervening or superseding negligence, and Brown was the sole cause of the collision.[2]

Viewing the evidence in the light most favorable to the City, the nonmoving party, the court finds genuine issues of material fact regarding plaintiff's negligence claim that preclude the entry of summary judgment. For instance, a jury could find that Brown caused the collision by slamming on his brakes and leaving Officer Engles, who

---

[2] In his summary judgment motion, plaintiff asks the court to dismiss defendants' affirmative defenses of (1) sole negligence of plaintiff and (2) intervening and superseding negligence of plaintiff, arguing that these defenses are only applicable to the conduct of a third party. Pl.'s Mem. Supp. Am. Mot. Summ. J. 19-20. The court agrees that under South Carolina law, the affirmative defense of intervening and superseding negligence is only applicable where a third party's conduct was involved. See Rawl v. United States, 778 F.2d 1009, 1015 (4th Cir. 1985) (applying South Carolina law) (citing Matthews v. Porter, 124 S.E.2d 321 (S.C. 1962)) ("Superseding negligence is . . . usually a rule allowing a defendant to avoid liability where damages have been caused by a third party or a force that was entirely unforeseeable . . . ."). Therefore, the court strikes paragraph fourteen of defendants' Answer. However, the court disagrees that under South Carolina law, a sole cause defense must be based on the actions of a third party rather than the plaintiff. See, e.g., Dover v. Lockhart Mills, 68 S.E. 525, 528 (S.C. 1910) ("[T]he defendant had the right to introduce any testimony . . . tending to prove that [the plaintiff's injury] was caused by the negligence of a fellow servant, or by the sole negligence of the plaintiff."). The court will not strike the third paragraph of defendants' Answer.

was following behind Brown by a distance that was reasonable under the circumstances, without adequate time to react. Therefore, the court denies plaintiff's motion for judgment as a matter of law on his negligence claim. See Cody P. v. Bank of Am., N.A., 720 S.E.2d 473, 479 (S.C. Ct. App. 2011) (explaining that determination of proximate cause element of negligence claim is traditionally a question for the jury).

### B.     Officer Engles's Motion for Summary Judgment

Plaintiff brings a claim under 42 U.S.C. § 1983 against Officer Engles, alleging that the officer used excessive force when seizing him in violation of the Fourth Amendment. Officer Engles moves for summary judgment, arguing that his actions were objectively reasonable and that he is entitled to qualified immunity.

Under the doctrine of qualified immunity, law enforcement officers performing discretionary duties "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court laid out a two-step process for resolving a qualified immunity claim by a government official. First, the court must decide whether the facts, "[t]aken in the light most favorable to the party asserting the injury," make out a violation of a constitutional right. Id. at 201. Second, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. The court has discretion to determine which prong of the Saucier test should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court finds that under the first prong, plaintiff fails to make out a violation of a constitutional right. Under this prong, the court must decide whether Officer Engles

violated Brown's right to be free from "seizures effectuated by excessive force." Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006). Courts faced with this question employ a standard of objective reasonableness, analyzing whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Scott v. Harris, 550 U.S. 372, 381 (2007); Graham v. Connor, 490 U.S. 386, 397 (1989). The Fourth Circuit has explained that "the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (citing Graham, 490 U.S. at 396-97).

While subjective intent is irrelevant, see Graham, 490 U.S. at 397, the court must still decide whether the officer's actions were willful rather than accidental. See Brower v. Cnty. of Inyo, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control. . . . [T]he Fourth Amendment addresses misuses of power, not the accidental effects of otherwise lawful government conduct." (internal quotation marks and citation omitted)); Howerton v. Fletcher, 213 F.3d 171, 175 n.4 (4th Cir. 2000) ("[A] Fourth Amendment seizure occurs only where an officer *intentionally* restrains an individual's freedom of movement."). To illustrate, in Brower, the Court explained,

> [I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. . . . It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . ., but only when there is a governmental termination of freedom of movement through means intentionally applied.

Brower, 489 U.S. at 596-97 (emphasis added).  The Court reaffirmed this holding in County of Sacramento v. Lewis, 523 U.S. 833 (1998), stating "that no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but *accidentally* stopped the suspect by crashing into him."  Id. at 844 (emphasis added).

Officer Engles claims he "was only following Mr. Brown in order to keep a visual on him" and argues there is no evidence the collision was intentional.  Defs.' Mem. Supp. Mot. Summ. J. 8-9.  To evidence Officer Engles's intent to collide with plaintiff's bicycle, plaintiff relies solely on Paramedic Spirk's report (the Spirk Report).  This report states, "CPD advises that they 'paced' the bike at less than 10mph and struck the back wheel of the bike in an attempt to stop the bike."  Pl.'s Am. Mot. Summ. J. Ex. 9 at 3.

Defendants object to consideration of the Spirk Report on summary judgment, arguing that it constitutes inadmissible hearsay.  See Fed. R. Civ. P. 56(c)(3) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Md. Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

Plaintiff seeks to introduce the Spirk Report for the purpose of showing that Officer Engles admitted he struck the back wheel of plaintiff's bicycle in an intentional attempt to stop the bike.  Because it is being offered for the truth of the matter asserted, the statement plaintiff attributes to Officer Engles in the Spirk Report constitutes inadmissible hearsay.  See Fed. R. Evid. 801(c).

Federal Rule of Evidence 802 provides that hearsay is not admissible unless it fits within a prescribed exception. Throwing out everything but the kitchen sink, plaintiff argues the statement in the Spirk Report "is an admission of an opposing party, present sense impression, and excited utterance. Furthermore, her report is a business record made in the ordinary course of business at the time of occurrence and past recollection recorded." Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. 17.

The court need not undertake a detailed analysis of each of these proposed hearsay exceptions because the admissibility of the statement in the Spirk Report fails for inability to identify the declarant. In her deposition, Spirk could not recall which CPD officer made the statement. Spirk Dep. 9:21-24. While Officer Engles denies making the statement, Engles Dep. 42:6-10, plaintiff contends "the circumstantial evidence is that [Officer Engles] would have been the only one who could have" made the statement. Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. 16-17. However, Spirk could not identify which CPD officer she talked to, and even though Officer Engles was present for her deposition, she did not recognize Officer Engles as being the person that provided statements to her. Spirk Dep. 9:21-25, 10:2-6. Spirk also had no independent recollection of the incident other than what she had written in the report. Id. at 16:9-12. She did not know whether the officer that made the statement to her was actually present at the time the accident occurred. Id. at 20:7-12. Finally, Spirk admitted it was possible she misunderstood what the officer told her. Id. at 23:2-12.

Plaintiff has not shown by a preponderance of the evidence that Officer Engles made the statement recounted in the Spirk Report or that Spirk's transcription of the statement was reliable. The statement could just as easily have been offered by Officer

Engles as by an officer who was not present at the scene.  Courts have held that the failure to sufficiently identify the declarant forbade a finding that the statement was an admission by a party opponent, a present sense impression, or an excited utterance.  See Meder v. Everest & Jennings, Inc., 637 F.2d 1182, 1186 (8th Cir. 1981) ("We reject the argument that the testimony is admissible as the admission of a party, for the simple reason that it has not been shown that Meder made the statement."); id. (finding it "impossible . . . to determine whether the maker of the statement was an eyewitness of what occurred at the scene and therefore it was improper to admit the evidence under [the present sense impression or excited utterance] provisions"); Belton v. Wash. Metro. Area Transit Auth., 20 F.3d 1197, 1201-02 (D.C. Cir. 1994); Greebel v. FTP Software, Inc., 182 F.R.D. 370, 373 (D. Mass. 1998).  Courts have further found that the inability to identify the speaker indicated a lack of trustworthiness because the court could not "know the source of the information, or when or under what circumstances it was obtained," thus prohibiting a finding that the statement fit the business records exception.  Meder, 637 F.3d at 1187; see United States v. Saunders, 886 F.2d 56, 58-59 (4th Cir. 1989); United States v. Jenkins, 499 F. Supp. 2d 1268, 1284-86 (M.D. Fla. 2007).  Finally, even if the Spirk Report itself may be admissible as a business record or past recollection recorded, the statement in the report that plaintiff attributes to Officer Engles still constitutes inadmissible hearsay.  See United States v. Filippi, 172 F.3d 864 (4th Cir. 1999) (statements in an author's recorded memorandum that are not those of the author constitute hearsay within hearsay); Ruffin v. City of Boston, 146 F. App'x 501, 506 (1st Cir. 2005) (finding, in § 1983 case against police officers for use of excessive force, that plaintiff's statements to EMT that were incorporated in EMT's report constituted "double

11

hearsay" but were admissible because they could be identified as statements of a party-opponent).

Without the statement plaintiff attributes to Officer Engles in the Spirk Report, plaintiff has not set forth sufficient evidence to create a genuine dispute over whether Officer Engles intentionally hit plaintiff's bicycle with the police SUV.  Brown has provided affidavits from two eye witnesses stating that Officer Engles did not have on his blue lights and that Brown did not appear to put on his brakes before the officer's vehicle hit Brown.  See Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. Ex. 1 (Aff. of Nakia Mitchell Jr.), Ex. 2 (Aff. of Kim Mitchell).  Viewing the evidence in the light most favorable to Brown, the two eyewitness affidavits do not show that the collision was intentional rather than accidental.[3]

Because plaintiff has not made out the violation of a constitutional right, the court grants summary judgment to Officer Engles on plaintiff's § 1983 claim for use of excessive force.  See Willingham v. Crooke, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage."); Vollette v. Watson, --- F. Supp. 2d ----, 2013 WL 1314152, at *6 n.8 (E.D. Va. Apr. 1, 2013) ("In the qualified immunity context, a plaintiff maintains the burden on summary judgment to demonstrate that the facts, 'when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right.'" (quoting Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007)).

---

[3] Whether the collision resulted from Officer Engles's *negligent* actions will be a matter for the jury to decide.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** summary judgment to plaintiff on defendants' affirmative defense of intervening and superseding negligence, **DENIES** summary judgment to plaintiff on his negligence claim, **GRANTS** summary judgment to Officer Engles but not to the City on plaintiff's state law claims, and **GRANTS** summary to Officer Engles on plaintiff's § 1983 claim for use of excessive force.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 15, 2013**
**Charleston, South Carolina**