IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JOSEPH I. BROWN, III, ) | |
| ) | No. 2:12-cv-01865-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CITY OF CHARLESTON and OFFICER ) | |
| SEAN ENGLES, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on defendant City of Charleston's motion for summary judgment as to plaintiff Stanley Brown's claim for failure to train and supervise under 42 U.S.C. § 1983. For the reasons set forth below, the court grants the City's motion for summary judgment.

## I. BACKGROUND

On June 2, 2011 at approximately 10:55 p.m., Officer Sean Engles and two other officers were on patrol in the Gadsden Green housing complex in Charleston. Officer Engles was operating a police SUV accompanied by the other officers. Am. Compl. ¶ 3. They noticed Brown, who was riding his bicycle and had stopped to chat with another person. Id. ¶ 4. The officers witnessed what they believed to be a hand-to-hand illegal drug transaction. Id. ¶ 5.

The officers pursued Brown, with Officer Engles remaining in the police SUV and the other two officers exiting the vehicle and following Brown on foot. In his recounting of the events, Brown claims that the SUV "comes behind me and trails me for a good while, and eventually, impacts me. I fly off the bike, and I land." Brown Dep.

1

29:1-3. Brown alleges Officer Engles had "decided to apprehend Plaintiff by driving his SUV into Plaintiff and his bicycle." Am. Compl. ¶ 6. Brown claims the collision caused

> Plaintiff's bicycle to be knocked out of control and to be broken, to be wrenched and to be demolished, whereby the Plaintiff sustained serious damage to and loss of use of said bicycle; causing the Plaintiff to be thrown violently about and to sustain serious, severe, painful and permanent bodily injuries; to suffer and continue to suffer pain and agony, both physically and mentally; to be put to great expense, past, present and future for medical care; to become permanently disabled so that the Plaintiff has suffered a loss of income and standard of living in the past, present and future; and, to otherwise suffer both actual and punitive damages.

Id. ¶ 17.

Defendants produced a police report summarizing the events that took place on June 2, 2011. The report states that Brown fled the scene after being ordered to stop by an officer who had exited the police SUV. The report further states that Officer Engles drove behind plaintiff and activated his blue lights, after which Brown suddenly slammed on the brakes of his bicycle. This caused the front bumper of the SUV to come into contact with Brown's rear bicycle tire. See Engles's Mot. Summ. J., ECF No. 24, Ex. 1.

On March 6, 2012, Brown filed a complaint against the City of Charleston ("the City") in state court, bringing a state law claim for battery. On June 20, 2012, Brown filed an amended complaint, adding Officer Engles of the Charleston Police Department ("CPD") as a defendant and bringing four claims: (1) battery against Officer Engles and the City; (2) negligence against Officer Engles and the City; (3) a § 1983 claim against Officer Engles for use of excessive force; and (4) a § 1983 claim against the City for failure to train and supervise. On July 5, 2012, defendants removed the case to federal court. On June 13, 2013, Brown and Officer Engles each filed motions for summary

judgment. On August 15, 2013, the court denied Brown summary judgment on his negligence claim and granted summary judgment to Officer Engles on the state law claims and the § 1983 claim for use of excessive force.

On September 12, 2013, the City moved the court to alter or amend its August 15, 2013 order by granting the City summary judgment on Brown's § 1983 claim for failure to train and supervise. On October 3, 2013, the court denied the City's motion because only Officer Engles, and not the City, had originally moved for summary judgment. However, the court granted the City leave to file a motion for summary judgment.

On October 9, 2013, the City moved for summary judgment as to Brown's § 1983 claim for failure to train and supervise. Brown responded on October 28, 2013, and the City filed a reply on November 7, 2013. The motion is now ripe for the court's review.

## II.  STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Id.</u> at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "[A]t the summary judgment stage the judge's function is not himself to

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

In his complaint, Brown alleges that the City is liable under § 1983 because it "does not provide a training program, policies, or supervision adequate to prohibit [officers] from attempting to detain individuals by running into them with their cars." Am. Compl. 6. In his response to the City's motion for summary judgment, Brown states this allegation somewhat differently, claiming that the City's failure to train results from police officers, including Officer Engles, believing that they "may ignore the published policies prohibiting the use of police vehicles to follow or seize a suspect provided the officer can say he did not intend to hit the suspect."[1] Pl.'s Resp. 12. The City asserts that it is entitled to summary judgment because there is insufficient evidence to show a failure to train.[2] Def.'s Mot. 5-6.

---

[1] This change is likely because Brown admits that the City has "facially valid policies," Pl.'s Resp. 15, and Officer Engles testified that he was aware of the policies. Engles Dep. 6:23-7:10.

[2] The parties also argue at length about whether there is an underlying constitutional violation in light of this court granting summary judgment to Officer Engles on Brown's § 1983 excessive force claim. See Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear in this circuit that a section 1983 failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee."). Whether the City is entitled to summary judgment on that ground depends on the seemingly novel issue of whether evidence inadmissible against Officer Engles could be admissible against the City.

The court granted Officer Engles's motion for summary summary judgment on Brown's § 1983 claim because the court determined that there was insufficient evidence to create a genuine dispute over whether Officer Engles intentionally hit Brown's bicycle with his police SUV. In making this determination, the court concluded that Paramedic

Section 1983 provides a remedy against any person who, acting under color of law, deprives another of constitutional rights. It is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

Municipalities and other local government units may be held liable under § 1983. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). Local governing bodies can be sued directly where their action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. "[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691 (emphasis in original); see

---

Casey Spirk's report, which stated that "CPD advises that they 'paced' the bike at less than 10mph and struck the back wheel of the bike in an attempt to stop the bike," was inadmissible hearsay that could not be introduced against Officer Engels. The court held the report inadmissible because Sprik could not recall which police officer made the statement to her, and therefore it could not be introduced as an admission by Officer Engles under Federal Rule of Evidence 801(d)(2), which provides that an opposing party's statements are not hearsay.
    Brown argues that even though Spirk's report could not be introduced against Officer Engles, it can be introduced against the City. He contends the statement is an opposing party admission by the City because although Spirk cannot remember which police officer made the statement, she was certain that the statement was given by a CPD officer. See Fed. R. Evid. 801(d)(2)(D) (providing that a statement offered against an opposing party and made by the party's agent or employee within the scope of that relationship is not hearsay). The City contends that the Spirk report is still inadmissible hearsay.
    The court declines to determine whether the report is admissible against the City, and therefore whether there is sufficient evidence to create a genuine dispute over the existence of an underlying constitutional violation. For the purposes of this motion, the court will assume, without deciding, that Officer Engles used excessive force against Brown in violation of Brown's constitutional rights.

Connick v. Thompson, -- U.S. --, 131 S.Ct. 1350, 1359 (2011) (holding that local governments "are not vicariously liable under § 1983 for their employees' actions"). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

In limited circumstances, "the inadequacy of police training may serve as the basis for §1983 liability." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S.Ct. at 1359 (citation omitted). To satisfy the statute, a municipality's failure to train must amount to "deliberate indifference to the rights of the persons with whom the police come into contact." Canton, 489 U.S. at 388. In other words, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390.

Claims against a municipality for failure to train are difficult to bring. "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs of Bryant Cnty. v. Brown, 520 U.S. 397, 410 (1997). Not only must the plaintiff "identify conduct properly attributable to the municipality," but the plaintiff must also "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404 (emphasis in original). The standard of fault

6

is so stringent because any less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities." Canton, 489 U.S. at 392.

For a failure to train to rise to the level of deliberate indifference, a plaintiff must show either (1) a pattern of unconstitutional conduct by inadequately trained employees or (2) a single violation of a federal right that is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Hill v. Robeson Cnty., 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010) (quoting Bryan Cnty., 520 U.S. at 407-09). A pattern of "similar constitutional violations . . . is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train," Connick, 131 S.Ct. at 1360, and "[o]nly in the rarest of circumstances" may municipal liability be based on a single violation of a federal right. Chennault v. Mitchell, 923 F. Supp. 2d 765, 787 (E.D. Va. 2013). Brown has not alleged a pattern of similar constitutional violations in this case. Therefore, in order to show an unconstitutional failure to train, Brown will have to fit his claim into the "very narrow" exception which does not require a pattern of foreseeable constitutional violations. Brown v. Frazier, 2013 WL 5739091, at *3 (E.D.N.C. Oct. 22, 2013).

In Canton, "the Court left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." Connick, 131 S.Ct. at 1361 (quoting Bryan Cnty., 520 U.S. at 409). In order to show deliberate indifference in this way, a plaintiff must show at least "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such

7

a violation." Bryan Cnty., 520 U.S. at 409.  In theorizing about this possibility, the Canton Court

> posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force.  Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights.

Connick, 131 S.Ct. at 1361 (citations and quotations omitted).

Applying the analysis used by the Connick Court, Brown must show under the applicable standard that it was highly predictable that Officer Engles would blatantly ignore CPD policy and use his car to seize Brown in violation of the Fourth Amendment – so predictable that failing to train Officer Engles not to engage in conduct contrary to that policy amounted to a conscious disregard by the City for Brown's Fourth Amendment rights.  See Connick, 131 S.Ct. at 1365.

Brown has failed to meet this standard.  Brown provides no evidence that the Officer Engles's alleged conduct was "highly predictable" or "almost bound to happen" due to a deliberately indifferent deficiency in training or supervision.  See Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987); Connick, 131 S.Ct. at 1360-64; see also Canton, 489 U.S. at 389-92; Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000) (holding that when a claim for failure to train rests on a single incident, the need for training must be "plainly obvious" in order to show deliberate indifference).  Even if the court assumes that Officer Engles blatantly ignored long-standing published policies and

then attempted to justify his actions based on a technicality, Brown has not shown that such behavior is a "recurring situation[] presenting an obvious potential for . . . a violation." Bryan Cnty., 520 U.S. at 409.

There a significant difference between the hypothetical posed in Canton and the current case. In the Canton hypothetical, the city made a "decision not to train the officers about constitutional limits on the use of deadly force." Connick, 131 S.Ct. at 1361 (emphasis added) (explaining Canton hypothetical). This failure to train resulted in a "highly predictable consequence" – that is, violations of constitutional rights. Id. In this case, the City did have an explicit policy and Officer Engles was aware of that policy.[3] Any alleged violation by Officer Engles is, therefore, one step further removed from the decisions of the City than those made by the officers in the Canton hypothetical.

Brown has alleged, at best, that the City did not train Officer Engles to abide by the City's foot pursuits policy.[4] "If that were sufficient to state a claim for municipal liability, it would functionally expose the City to respondeat superior liability, which has

---

[3] Under Section 3.30.1 of the CPD Policy and Procedure Manual, entitled "Foot Pursuits," CPD officers may not use a vehicle to "pursue, hit, block, grab or inhibit the movement of a fleeing suspect." The manual further states that

> [w]hen vehicles are used in a foot pursuit situation, they will be used only to transport officers to locations where they can be placed in an advantageous position to intercept the fleeing suspect while on foot. Whenever possible, when transporting the officers to these strategic locations, vehicles will follow a route that runs parallel to the actual foot pursuit route. This will avoid the possibility of the vehicle involved striking any of the participants in the foot pursuit.

CPD Policy & Procedure Manual § 3.30.1, Pl.'s Am. Mot. Summ. J., ECF No. 33, Ex. 4.

[4] There is a real question as to whether the foot pursuits policy even applies in this case since Brown was riding a bicycle and presumably could easily escape from officers chasing him on foot, but that question is for another day.

9

been explicitly foreclosed by Monell." Lee v. City of Richmond, Va., 2013 WL 1155590 (E.D. Va. Mar. 19, 2013) (holding that an allegation that a city failed to train particular officers to deal with a particular situation in a particular instance did not give rise to municipal liability under a failure to train theory). It also does not suffice to argue "that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." Canton, 489 U.S. at 391. "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to respond properly to the usual and recurring situations with which they must deal." Id.

In short, Brown has not shown that Officer Engles's alleged conduct was anything more than a "one-time negligent administration of [CPD policy]," and therefore the City cannot be held liable as to Brown's failure to train claim. Bryan Cnty., 520 U.S. at 408.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** summary judgment to the City of Charleston on Brown's § 1983 claim for failure to train.

**AND IT IS SO ORDERED**.

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**December 30, 2013**
**Charleston, South Carolina**